# Noble, et al. v. Saffold.

### *Ejectment.*

(Decided June 12, 1913.　Rehearing denied June 30, 1913.

1. *Adverse Possession; Evidence.*—Deeds under which the evidence showed that actual possession of the land was taken by the grantee are admissible to show good faith in taking and holding possession, even though the description is too uncertain to operate as conveyance of title or to constitute color of title.

2. *Same; Jury Question.*—The evidence examined and held to require a submission to the jury to determine whether defendant's possession was adverse or merely under a claim of ownership to the true boundary line which was uncertain.

APPEAL from Montgomery Circuit Court.

Heard before Hon. W. W. PEARSON.

Ejectment by W. A. Saffold against A. S. Noble and others. Judgment for plaintiff and defendant appeals. Reversed and remanded.

FRANK W. LULL, and L. A. SANDERSON, for appellant. Saffold could not claim adverse possession under color of title to three and two-tenth acres east of the tract conveyed by his deed when his deed conveyed only thirty acres.—*Bromberg v. Yonkers*, 108 Ala. 578; *Carlin v.*

*Wilson,* 58 South. 417.   This is a controversy between co-terminus owners and the possession is presumably not adverse as to the strip in dispute.—*Taylor v. Fomby,* 116 Ala. 621; *Hess v. Rudder,* 117 Ala. 526; *Hope v. Adams,* 121 Ala. 664.   The court was not in error in not permitting the plaintiff to show that the witness Abercrombie had been convicted of a forgery in the circuit court of Montgomery.—Sec. 4009, Code 1907; 131 Ala. 50.   Noble was entitled to testify that he went into possession of the land under his deed from Mr. Graves.—102 Ala. 398; 74 Ala. 64.   A deed from Tweed to Saffold was not admissible as another was in adverse possession.—*Curtis v. Riddle,* 59 South. 47.   Counsel discuss other assignments of error, but without further citation of authority.

BALL & SAMFORD, for appellee.   The dispute was over a line between co-terminous owners, and neither can acquire title by adverse possession.—*Walker v. Wyman,* 157 Ala. 478.   The defendant cannot claim color of title because it is admitted that his deed described the lands according to government numbers, and that the strip sued for was not included therein.—31 Wis. 146; 68 Wis. 317; 7 Jones 430.   Noble's holding was intended to be to the true line, and could not extend beyond that line, and plaintiff ought to recover.—*Davis v. Caldwell,* 107 Ala. 526.

MAYFIELD, J.—The action is statutory ejectment.

The land involved is a narrow strip described as follows:   "All that part of the northwest quarter of section nine (9), township sixteen (16), range eighteen, lying north of the Mt. Meigs road and west of the line dividing the east half from the west half of said quarter section and east of an irregular line beginning one

hundred and sixty-four feet west of northeast corner of the west half of said quarter running in a southerly direction to a point seventy feet west of said quarter section line on the north side of said Mt. Meigs road (except about twenty feet off the south end thereof now used as the right of way of the Montgomery Light & Traction Company), being now cultivated by said Ray. * * *" The action was brought by appellee against appellant Ray, who was a tenant of Noble, who was made a party defendant as is authorized by statute. The only real dispute between the parties is as to the boundary line.

A great number of deeds were introduced in evidence, some as muniments of title and some as color of title and evidence of bona fide claim of title. The defendant objected to the introduction of a great number of these deeds in evidence chiefly on the ground that they were void for uncertainty in the description of the land attempted to be conveyed, and because they did not describe the land involved in the suit. Some of these were very indefinite and uncertain as to description, but there was evidence tending to show that actual possession of the land in question was taken under these instruments, and that the land in question was actually held and claimed under these deeds; and hence they were admissible to show good faith in the taking and holding of possession thereunder, although the description was too uncertain to operate as muniment of title to the land in question, or to answer as color of title. For this reason, we find no reversible error in the admission of these instruments in evidence in connection with the other evidence to show good faith and claim of title to the land in question. It is unnecessary to notice each of these assignments as they all involve practically the same question, though the description in

[Noble, et al. v. Saffold.]

some is more certain than in others. There was a great deal of evidence as to the different surveys and plattings of this land, and parol proof as to the actual possession.

The court, at the conclusion of the trial, gave the affirmative charge for the plaintiff. This was reversible error. There was ample evidence in this case to support a verdict and judgment for the defendant if the jury believed it; and the court should not have taken the question from the jury. The defendant's evidence tended to show that he and those under whom he claims had been in the actual, open, notorious, and continuous possession of the land, under claim of right and title, for more than 30 years prior to the bringing of the suit. It was clearly open for the jury to infer that this possession was adverse to that of the plaintiff and of all the world, and that it had continued for such length of time as to ripen into title; and that this possession was of such character and of such duration as to raise the presumption of a grant. It is true that there was some evidence tending to show that Noble's possession of the strip in question was not adverse, but that he was merely claiming to own up to the true boundary line which was unknown and uncertain; and that, while he was in the actual possession of the land in question, he was not claiming to own it if the true boundary line—when ascertained—showed that it was not a part of the tract claimed by him, and included within the description of his deeds. For this reason the general affirmative charge could not be given for the defendant.

If the jury believed this phase of the evidence, then Noble's possession was not adverse; and, if they believed the evidence of the plaintiff's surveyor, the lands in question were not included in Noble's deeds, and for

this reason he could not recover, although he had been in the actual possession for more than 30 years. There was, however, as before stated, ample evidence, if believed by the jury, from which they might infer that the possession was adverse, was for more than 30 years, and contained all the other elements necessary to make it adverse. For example, the defendant Noble testified, among other things, as follows: "That he had been acquainted with the tract of land in dispute long years before he bought it, and that he bought it 29 years ago. That he remembered a survey made under the direction of Mr. Saffold by Mr. Washburn. That he had a letter from Mr. Saffold to call at his office. That he called at the office of Mr. Saffold, and that Mr. Saffold told him that his (witness') tenant was encroaching on Saffold, and that Saffold wanted to run the line between himself and witness. That witness told Saffold he was not aware of any encroachment and that he would speak to Mr. Ray, who was his tenant, about it. That witness was perfectly willing to establish a line. That witness did not make any statement that he did not know where the line was. That, if there was one thing in and about the place that he did know, it was where the lines were. That he knew where the line was—what he bought for the line. That he had nothing to do with any instructions as to surveying that. That he did not furnish any description of any land by which a line was to be run. That Mr. Saffold brought him out. That he came out at Saffold's request to run that line. That witness made no agreement with Mr. Saffold that any line which he might run or establish should be a line between witness and Saffold. That witness did not know that the surveyor intended to run the section line between the east and west half of the section until he got out there. That there was nothing said to witness by

Mr. Saffold, or in the hearing of witness, in reference
to running any line between the east and west half of
that northwest quarter section. That witness had noth-
ing to do with the survey other than to be present, at
Mr. Saffold's request. That witness never said any-
thing to Mr. Saffold about abiding by the survey which
he had made. That he told Mr. Saffold that he objected
to it. That witness did not furnish any data to the sur-
veyor or either of the surveyors. That they did not ask
for any. That they didn't ask for the deed of witness
until after the survey. Mr. Washburn then asked wit-
ness if he had his Graves deed with him. That at the
time he went into possession of the tract of land he
fenced the entire tract, and that the line fence was on
what is shown here to be line 'A.' That it began to rot
down about the time that Wiggins left the place in 1891.
That witness remembered when Saffold came up and
bought the other place. That witness was in possession
of the strip or tract of land here in dispute at that time.
That witness was in possession of this strip here be-
fore Mr. Saffold came here. That he has been in pos-
session of it ever since then. That he has been renting
it. That it is in possession of witness at this time.
That crops of cotton, corn chiefly, have been grown on
it. That he had never had any conversation with Mr.
Saffold in reference to or any understanding or make
any agreement in reference to surrendering or giving
up that tract of land." Witness Noble further testified
that "he was put into possession of the tract of land
by a tenant, Edison Williams, by walking around the
hedge rows and showing him the lines; that Edison Wil-
liams was a tenant of Mr. W. H. Graves from whom wit-
ness bought the land." In answer to the question, "Did
Mr. Graves give you any information?" witness stated,
"Only by turning over Edison Williams' rent notes and

[State, ex rel. Bibb, et al. v. Town of Warrior, et al.]

telling Edison Williams to give me all the information I wanted about the place."

This, in connection with other evidence of defendant's witnesses, was sufficient to carry the question of title by adverse possession to the jury, and the court erred in giving the affirmative charge for plaintiff.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and DE GRAFFENRIED, JJ., concur.